Thank you both I Been setting up. Let me go ahead and call the case These are case numbers 22 dash 1 1 6 1 7 and 22 dash 1 2 5 3 5 both hunt refining company versus the United States environment environmental protection agency on The government side. How are you splitting your time in terms of jurisdiction and merits? Your Honor we inform the clerk. I I'm Patrick Jacoby I'll be handling parts one and two of the argument section of our brief. That's the venue and retroactivity discussion My colleague Brian Harrison is going to handle parts three and four of the argument section of our brief Which is the statutory interpretation and then part four is really the record based Part of the of the argument including the economic analysis. Okay. Thank you very much Sorry and time-wise we were gonna split eight for me so I have that eight and seven, right? Mr. Huston Is that the way to correctly pronounce your name it's it's pronounced Houston like the city you're on okay Houston it is May it please the court Until the decision at issue here EPA had found in every single year of the RS RFS programs existence That hunt is entitled to hardship relief That's because hunt in many ways epitomizes the type of small refineries that Congress created the hardship exemption to protect Unlike its larger competitors hunt is not capable of blending The vast majority of the transportation fuel that it produces that blending instead has to be done downstream by other parties That means hunt has no choice But to go into the market and attempt to buy RINs at exorbitant prices Hunt before you dive into merits. Let's talk about venue a little bit first I know that both sides have briefed the issue But we have a decision From our court from a couple of months ago which sort of sets the general parameters of how we're supposed to figure out whether This petition for review belongs here or belongs in in the DC Circuit So if you could take a couple of minutes and discuss venue before you dive into the merits, that would be helpful Absolutely judge Jordan. I'm happy to do that I think what's critical about the RMS of Georgia case that your honor refers to is that in that decision? While the although the agency is making nominally a decision for just one petitioner in order to make that determination As the court explained EPA had EPA had to consider the ways in which each Applicants petition would affect all the other applicants. It was as the court described it a zero-sum game So the court couldn't when the court granted one petition that would affect all the other petitioners I think in that type of situation under the Clean Air Act The agency necessarily has to look at everybody in Relation to each other and that I take to be the critical part of the court's reasoning in RMS of Georgia We don't have anything like that here by statute EPA was required to look at hunt refining companies Individual economic circumstances. We're talking the critic and you say that it didn't I think that they did that's almost a This is my perspective only What I think helps you on the merits hurts you on venue because one of your arguments on venue on the merits is The EPA is just so wrong because the statutory text and history require it to consider hunt refining specific circumstances as related to the Tuscaloosa Location and it didn't do so So given that the EPA basically aggregated all of these 30-something hardship petitions and Expressly said that it was deciding Everything based on a newly set out standard and a new interpretation of what the Clean Air Act's text meant How is that not a ruling that is national in scope your honor? I am perfectly content to take the EPA at its word This is from their brief page 50 quote EPA Responded to the specific confidential facts and arguments raised by hunt and it quote gave a detailed discussion of hunts refinery specific contracts markets and studies We agree that EPA looked at the data that we submitted Our point is that they did a very poor job of analyzing that data They did their and their consideration of the individual economic circumstances that they that we submitted was arbitrary and capricious But it doesn't mean that they didn't do it. So that's why I think fundamentally. This is a decision that belongs in this court This was a decision about one refining companies Individual economic circumstances it had to be under the terms of the Clean Air Act, but in but in your brief on page 43 You say that the EPA? Refused to consider each refinery individually Well, it certainly swept with a broad brush on I mean, I think that is when when it did that analysis it Focused EPA focused on market wide factors it looked at the price of oil in New York Harbor and then attempted to Extrapolate that what the conclusions that it drew from that to hunt situation in Tuscaloosa, Alabama That is I think arbitrary and capricious administrative action because it's not giving serious consideration to me It may well be counsel But the problem for you on venue is it's if it's arbitrary and capricious in a nationwide Application you lose on venue you go make your arguments before the DC circuit The question is whether the action is nationally applicable and on the April denial I think it's undisputed That it affected small refineries in 18 states eight different federal judicial circuits Let me ask you this if I have an EPA action determination, whatever it is that was being challenged affected refineries in 50 states Would you still say it was not nationally applicable I think the number of states is not the critical factor your honor. What's critical is? Yeah, but it's it's overwhelming evidence of the fact that there's nationwide application That what had nationwide application was EPA's Analytical framework. They said we're making what and what that really is is a hypothesis. That's fine. That's fine Analysis is action. It's decision. It's what you're challenging You don't come in here and just challenge the end result you say this is where they went wrong And if what what has nationwide application, is there an analytical framework then your chalk? You're challenging an action that has nationwide application Respectfully judge currents. I would disagree with that I think what we are challenging is the action that's at issue and the action Under the terms of the Clean Air Act is the EPA's determination that hunts refinery does not experience disproportionate I thought you said that where the EPA went wrong was the analytical framework I just heard you say that Both steps of it were wrong your honor, but there's a you know, there's a different but if you're challenging the analytical framework You're challenging something that has nationwide application Your honor the court's precedents have held an EPA Strenuously argues that then the petitioners challenge is not what determines venue under section 17607 what determines venue is the content of the administrative action and the action at issue here is EPA's The EPA can argue what it wants to counsel, but we determine At least in first instance as a federal appeals court What determines venue? All right second instance the district court does first I? Certainly agree with that your honor My point is just that when you did when you make that determination you look at what is the administrative action under review if EPA? Had chosen to set out just a new analytical framework if they did a rulemaking and said this is how we are going to analyze And think about small refinery hardship relief in the future. We would need to bring that to the DC Circuit I agree with your honor, but they didn't do that here. They chose instead to proceed by an individual adjudication About our client affecting our individual economic circumstances And I think crucially the determination that EPA made in this case was based and 29 other small refineries correct on the April Am I wrong they decided a number of them together? But they had to do it by looking at each refineries individual economic circumstances It turns on things like so they applied a test that varied from refinery to refinery and just coincidentally They've reached the same result in 30 of them 30 out of 30 what they applied your honor was an economic hypothesis They had a hypothesis that all refineries are able to pass through their costs of compliance with the RFS Then they had to test it and you're challenging that you're challenging that and it affected 30 Refineries we did not we think that the the hypothesis was incorrect We think we prove that the economic hypothesis was incorrect for our client for hunts refinery And that's what I think it was incorrect for your client Hunt refineries it was incorrect correct for 39 29 other risk small refineries was it not no your honor not Necessarily it depends on each so they can they can apply an incorrect analytical framework and an incorrect hypothesis and Reach an adverse effect on 29 other refineries, but that doesn't make it incorrect Is your honor that when they they have a hypothesis they have to test it against each refineries data And when they do that analysis the application not the creation of the rule that would have had to go to the DC Circuit But it's the application that is the administrative action at issue here and on that application It turns on our points about for example the fact that hunt Disproportionately produces diesel fuel and its customers in Tuscaloosa don't want to buy Renewable diesel it turns on the fact that hunt unlike some of its larger competitors has to ship its product through the colonial Pipeline that doesn't accept blended fuel those are the facts in this record that the administrative action Turns on they are what proved that EPA's conclusion was incorrect And that is those are fundamentally local determinations that have to do with hunts individual circumstances if I could say a word About the merits for just a moment let me ask you this and we'll give you some extra time to discuss the merits If the EPA Okay, let's assume that Refineries had been seeking economic hardship exception on a Showing that amounted on an on a linear scale of four Okay, so factors one two three and four and in most cases over the past several years a lot of them Had been able to get relief when they showed one two three and four and the EPA had been generally consistent in applying its standard All of a sudden this year new year comes along and the EPA decides you know what Four is not enough we're gonna require nine So the standard is now nine We're gonna look at every one of these 30-something petitions before us They're all at the four and five range they all lose because they don't hit nine Does that go to the DC circuit or that stay with us? I think that's a locally applicable determination your honor if I understand the the point correctly If I understand the premise of the question that what the administrative action the EPA is taking is a decision about whether each of the refineries Experiences disproportionate economic hardship from the RFS. Yes that determination is so you can never have Under your I don't want to put words in your mouth, but under your interpretation of the venue provision You can never have a decision of nationwide scope and effect because every refineries Petition has to be either Granted or denied basically right your honor with two caveats camp that can't be right your honor Here's what the venue provision that we're talking about is for the entire Clean Air Act. It's not for the RFS It's not for the small refinery petition process. This is a venue statute for Innumerable different determinations that the administrator, but the EPA Doesn't just set out Standards or any agency they don't they don't just set out standards in the abstract they apply those standards That's that so you're so you're saying the only time that venue is necessarily fixed in the DC circuit is if the EPA Sets out a standard, but doesn't apply it I think if in that situation venue does go to the DC circuit if EPA chooses to proceed by rulemaking if it makes the rule But doesn't apply it it goes to the DC circuit, and I think there are no no it sets a rule Apply it For the DC circuit your honor. That's not what we rule and applies it generally if it's in the context of the I can't speak To all of the determinations that exist under the entire Clean Air Act no Nobody would ask you to and I think that the RMS of Georgia Shows you a kind of case where a decision that although it actually looks like it affects only one refinery requires a nationalized Consideration of all the petitions together. I think RMS of Georgia was rightly decided on that framework But that's very different than what you have here And I the only point I'm trying to make is that when the statute directs the agency to make a determination about whether one refinery Experiences quote disproportionate economic hardship and that has to turn on the quote economic factors affecting that refinery That's an individualized decision because it affects only one refinery in one place And it belongs in the regional circuits not does it affect only one refinery if the EPA is making a determination That it's applying across the board the same policy what they were applying across the board your honor was their hypothesis But again, they didn't stop there. They had to test it. They acknowledge I mean, I think EPA concedes that they needed to actually test whether their hypothesis was true By they had a statutory obligation to consider the submissions of hunt and all the other petitioners about their individual circumstances They say they did it. We think that they did it We just think they did a very very poor job of explaining why the hunts evidence did not actually show disproportionate economic hardship Can you give him six more minutes, please Thank you very much touch on the merits, thank you so much your honor I appreciate that I promise not to bother you not no bother your honor I'm very happy to answer the court's questions on these important issues What I want to say principally about the merits I think the easiest way to understand the fundamental defect in what EPA did here is And why this decision was unlawful both because it was retroactive and because as a practical matter it was arbitrary and completely retroactive right because It's applying it in the moment It's not going back and taking away your economic hardship exception that was granted a year ago or two years ago, right? Actually, you're just saying that but for 2018 your honor. I mean they tried to fix it in a different way They granted the 2018 petition for our client and then they withdrew it later But you're right for both for the other years at issue 2019 through 2021 But the big point the big point I think you have on that issue is Notice or lack of notice and the changing of the stand precisely right your honor and and just I mean The by the first of all EPA was years late There's a statutory deadline on EPA to decide these petitions They failed to meet it by years and they failed to do it in a way that the compliance years were already over in 2019 our client set a compliance strategy based on the framework that EPA had used in every other year of the program's existence Then you know, so we have that everybody knows there's the deal the Department of Energy scoring matrix That's how you determine small refinery hardships. That's how EPA has always done it We act in reasonable reliance on that then years after EPA was required to decide our petition They throw out the matrix entirely and they come up with a new adjudicatory hypothesis a new way of analyzing this we have no Opportunity at that point to change anything about what we did We can't go back in time and blend more fuel in the years at issue We can't change the RINs that we bought and to make things I think so much worse EPA's mismanagement of the program has caused prices to skyrocket in the meantime, so it now costs Many many millions of dollars more it's a tenfold increase the difference in the price. That's real Massive economic harm to our client EPA caused it and they have done absolutely nothing to mitigate it They've changed around some compliance deadlines But they don't have an answer about the price and that is really the most significant injury to our clients That's what makes the decision here unlawfully retroactive. I Because we know EPA has just told us a few days ago that they're going to apply the same analytical framework the same economic Hypothesis moving forward to other years at issue and we have a new petition for review just piled last week About their denials that they've just issued the fundamental problem What makes this decision so arbitrary and capricious is that it fails to consider important aspects of the problem and it rejects that it Ignores the clear evidence in the record so just to take I think sort of the most egregious examples the premise of EPA's economic hypothesis the premise of their decision is That all refineries buy or have to buy RINs rateably They have to buy RINs as they go along we prove to EPA that refineries that our client can't do that We submitted evidence in the record. It's at volume 7 of the appendix tab si 251 We showed that if EPA had required us to do that the company doesn't have the money It can't go out and buy million the RINs that cost millions and millions of dollars every single day and keep in mind This is a company that has never in the history of the program been forced to buy RINs rateably So it can't do it it acted in reasonable reliance on having been told by EPA Every in every other year that it wasn't required to do it In fact EPA specifically told hunt that quote it need not acquire RINs at the same time that it produces fuel That's exhibit a to our declaration in support of a motion for a stay So I really think EPA has not only pulled the rug out from under us by retroactively changing the standard after the fact They've they've they've violated the Administrative Procedure Act because they premised their decision on a fact Rateable RIN purchases, which just isn't true It can't be true for this agency and then the last thing to say about rateable RIN purchases Is that if that is your is your contention that? this has to be Reduced to rulemaking or it can just be ad hoc Determination on a case-by-case basis in terms of the standard Yeah, I think EPA can proceed by adjudication your honor when it decides small refinery hardship petitions That's how it's always done it in every other year of the programs in every other prior iteration of The denial of small refinery hardship relief EPA acknowledged that those petitions needed to go to the regional circuits not the DC Circuit So EPA can proceed by adjudication, but it's got it, but it's but it's got us it has to apply a standard, right? Of course, and how does it apply a standard in case-by-case adjudication sort of in a common law administrative law way like okay? Our first hardship petition was received in 2016 just to use a hypothetical year and in that very first case We set this standard and now we're going to apply that standard going forward to every hardship petition That's the way it's supposed to operate if the principles of retroactivity are based on principles of fair notice So that's I think the fundamental standard EPA has to give refineries fair notice of what it wants them to do and What it wants them to demonstrate in their petitions for relief EPA did not do that here We had no opportunity to change anything about our compliance strategy when EPA makes a decision years late And we have no we had no way to know what would be the factors that would be determinative for our petition All right, so counseling then wait hold on got a question In the case where it gives them fair notice it announces a standard and gives them fair notice The venue for that is in the DC Circuit is it not? Depends your honor on the form of the decision, so I think fair notice could come either in a rulemaking no No, no it doesn't because any decision that gives fair notice will have to As a premise of it say it applies to everybody otherwise the notice isn't fair You don't know it applies to you or not so when they announce a new standard It's what you're saying. They must do in order to give fair notice and that belongs in the DC Circuit. It's nationwide I think EPA can proceed by by by adjudicating all of the petitions in other words it could give hunt a Decision, but it can't give Counsel, but how do they give? fair notice If they take one by one for hundreds of cases When will the fair notice exist? Hunt EPA can give hunt a decision in an adjudication that affects hunt and tell hunt in order for you to Demonstrate disproportionate economic hardship next year this is what you need to do And this is what you need to show we have fair notice at that point I think I would concede, but nobody but no one else does Under your view they can do the same thing for all the other petitioners Oh, I'm saying they have the I know they can but unless they do They the other refineries won't know what they're supposed to do only if they announce This is what we're going to do and it has nationwide application Does it give fair notice to all the other small refineries in the country? I'm saying your honor is that EPA has the opportunity to choose it can proceed by rulemaking along the lines that your honor Suggests and give fair notice that way I think it can also give fair notice by simply giving adjudications to the Individual petitioners about what they are going to need to show in the future either could provide fair notice and EPA gets to choose But the choice has consequences and when they make a decision to decide an individual petition That has to go to this court. Thank you. Mr. Huston. Thank you very much. You've saved your time for rebuttal Just a housekeeping matter given the extra time given to petitioners am I correct that we will also receive similar amount of extra time or We'll do our best. All right, because I don't if we take you Way beyond your allotted time on venue, of course, we'll give you more time understood I'll jump right in then for the sake of time So I'm gonna just take some of the points that well before you before you do. Here's a question in cases before this one in cases in other parts of the country The EPA had told courts that these sorts of hardship determinations Should be filed when there's a petition for review in the regional Court of Appeals. What has changed? To begin with your honor. That's not an entirely correct blanket statement Okay, there are instances for instance the lion oil case We initially argued and this is in our brief and in their brief the lion oil case We initially argued that venue was not proper in the 8th Circuit and then it should go to the DC Circuit It was decided against us eventually the Hermes case H-E-R-M-E-S involved a refinery in I'm not remembering which state but it was not Certainly was not in the District of Columbia or the Mid-Atlantic region that was heard in the DC Circuit So it is not correct as a blank statement that all the decisions regarding individual Single refineries were heard in the regional circuits, but it but in in in other places According to what Hunt is arguing in places other than the 8th Circuit where you were bound by existing precedent for example in the fourth you Stated that the challenge to denial of a hardship petition was properly venued in the right in the regional Court of Appeals. So Like what has changed? Well your honor I'm gonna back up then so to begin with the Supreme Court has recognized and counsel does not Hunt does not dispute the fact that Agencies have broad discretion to shape their actions here EPA because it was applying the same framework to 30 small refineries across the country Reaching the same result even though it did consider some of the information submitted by those small refineries But in reaching the same result through the same methodology EPA Said well, isn't it more efficient to make this one action that decides these individual small refiner petitions? and this court has Accepted the idea that an agency can bundle a number of different actions in the RMS of Georgia case That was actually One of the points of contention of the other side that that was not allowed and and this court found that it was so if in This case how many petitions were decided together here 30 something in total between the two actions 105 your honor Okay, so if the number is 105 and the EPA had granted 60 and denied 45 Would it be a decision of national scope that has to go to the DC Circuit? I'll try to answer your hypothetical as best I can if I think Probably what EPA would do there if it's applying the same methodology same test same standard But it comes up 60 denied 45 granted or vice versa doesn't matter It would depend on the reasons for the grants The grants are that you satisfied the new standard and the denials are you didn't satisfy the new standard? I can't speak for what EPA would do because it hasn't come up in that context I guess the EPA would have discretion to but that matters because because if your answer is All of those go to the DC Circuit. That's consistent with your position here. I I think that's correct So I think I would answer it two ways One is I think if they did that in one action I think there's a pretty strong argument that should go to the DC Circuit and that would probably be the position you pay with even Though you clearly evaluated every petition individually clearly evaluated every results Sorry, we clearly evaluated every petition individually in these actions and came to different results and that has been conceded here How is that different than setting out a standard in case number one back in 2016? Applying that standard consistently every year and then every year granting 60 and denying 40 The difference those cases you'd agree that they would go to the regional circuits, right? The difference is based on the two deter let's back up if we can in the RMS of Georgia case where Sites across many different states were affected Council says that's not a critical factor. It is a critical factor It's one of the first factors that the case is decided on So first of all applying it across many different states I would say EPA would take the same position in your hypothetical as they have here second what EPA did here It's it's a twofold piece of analysis. One is statutory interpretation They changed the statutory statutory interpretation, which had been in flux sort of for years and pushed around by Congress a little bit to say Disproportionate economic hardship must be caused by RFS compliance in conjunction with that can't be separated out The economic analysis that they use concludes that all these RFS compliance costs are passed through so applying those two things together They that is why the decisions are nationally applicable and nationwide in scope. So if they use that here next year when The EPA applies the standard it now has and denies individual petitions On a case-by-case basis, where do those go? EPA would have discretion to bundle. So if they did know they're not bundling Because now they have a standard they've set the standard the standard was set here in this consolidated group of petitions They have the standard it hasn't been decided by any court yet. It's still in flux So they're like we got a standard now. We have the 2022 2023 petitions We're going to address every single one individually hunt refining you lose, you know blank refining you get it So forth and so on where do those go? Taking a hundred and five separate actions. Is that hypothetical? Well EPA has discretion to shape its actions and it according to this court discretion is to do them separately 105 According to this court, it has discretion to bundle those. So if they did not bundle it did not bundle in my hypothetical Where do they go it if they didn't choose? They would go to the regional circuit. I think we would have a decision of bundling is what makes this national not not entirely Just to back up again. It's the application of the economic analysis and the statutory interpretation I think in your hypothetical EPA would have discretion to either argue either that those belong in a regional circuit or That they belong in the DC circuit you still you still Have suggested that even in that evaluation it would be an individualized determination There are individualized aspects of what EPA did in these actions and there would be in just as there would be in those what I'm Saying is 7 6 0 7 b 1 is a practical delegation to EPA Based on the broad discretion records recognized for agencies to shape their actions Which Congress recognized and knew when it enacted the provision in 7 6 0 7 b 1 it gives EPA a fair amount of authority To say we think this should go here because of these reasons Okay And it suggests to me that you view the statute as saying it's really discretionary for the EPA to decide what venue you want To have I'm not saying it removes all discretion. I'm saying EPA is given a fair amount of Discretion and looking at the shape of the action which this court found in RMS of Georgia That's how you're supposed to decide this You're supposed to look at the shape of the action the face of it for national applicability and EPA has discretion To make the determination of nationwide scope and effect which should carry some amount of weight We would argue so in the hypothetical if they took 105 separate actions based on this same economic theory EPA would have discretion to say That those individual actions should be heard regionally or should be heard in the DC circuit But the but the EPA's discretion isn't binding It's not buying a court a court decides where those go. So where do we decide those go? That would be up to the court. It would depend on worse. I'm telling you to predict for me where we would send those I think it's a much closer call than this case where the actions are Made all at once using the same formula, but I I would say those should go to the DC Circuit. You're on. Okay Can you give him seven more minutes, please? Just to tack on one other piece of that I think part of your hypothetically said what if they granted 60 and denied 40? I mean, I think EPA would also have discretion to say both of those pieces are even as separate actions go to the DC Circuit I mean or they could you know have one of those pieces go to the DC Circuit and you say discretion But I read the EPA has no such discretion The EPA can say whatever it wants, but a court has to decide whether and how 7606 applies and whether or not the EPA's decision is of national scope or effect. I don't contest that your honor I'm saying EPA has discretion and courts have recognized this as to whether or not to make that Determination of nationwide scope or effect agree in the second part I do think EPA's determination There is entitled to some discretion based on Sierra Club versus Levitt footnote 12, which is set in the amicus brief But I don't want to get too caught up in that. I want to go back to RMS Council said that the We've given you more time to address the merits part So you can you proceed the way you wish if you just want to do venue, that's perfectly fine All right. I think this is your extra time. I think in your four through nine example, your honor I think that also would go to the DC Circuit. I disagree with opposing counsel and Just moving on let's I guess get into retroactivity for a second It's our position that And I didn't hear counsel talk about due process at all that there's no due process Violation here because there was no vested legal right. These were pending exemption petitions. This was not a vested property, right? The exemptions that they received previously are very clear. They're only supposed to last for that year there's no automatic renewal provision, in fact the Change things on the run. I mean, well, let's get right into the notice question. So I mean if you if you've been doing things in a certain way for and I think this applies even in the agency context If you've been doing things for a lot of years in a certain way And you reverse course Usually you reverse course going forward, but these are backward looking Hardship petitions are they not? Your honor I would argue that they are not because they were all pending at the time And so that for relief for prior years, right? when Are sort of trying to do what they do in light of an announced standard. It's not like if you Change the standard and Then told everybody listen when you guys file your petition starting in the fall of 2023 This is the new standard you better comply with it. You better satisfy it or else your hardship petition is going to be denied You go back and you because of the delay that was an issue here you apply them to prior years You don't think that's a problem. I'm going to ask the court for the way to make two points first is They were on notice look at pages 10 to 12 of our brief particularly at some of this is CBI So I'm not gonna say what it specifically is But look particularly at the block paragraph on page 12 in June of 2021 Hunt submitted letters to EPA that says exactly That they were on notice of the new statutory interpretation and the new economic analysis It shows that they were on notice Yeah but these but on notice at that time but they've already taken the conduct for the for the Hardship year in question when the deny this is the second point when the denial actions were issued The compliance deadlines had been extended out and there was time to comply There was it's how much time was provided there was till September 2022 for 2019 December 2022 for 2020 September 2023 for 2021. There's also a flexibility rule We mentioned on our brief that gives them options for sort of like an installment plan to spread this out right, but again, you're so like for example for the SRE petition for 2018 When would they have been on notice that there was going to be a new standard? Certainly when the DC Circuit remanded it because I wrote that motion and it said because of inner meaning legal events We're going to need to revisit these decisions Including the Supreme Court's decision in Holly frontier and the RFA case in the Tenth Circuit, which they argue is not good law I don't think the court needs to address that the fact of the matter is the old way of proceeding the old statutory interpretation and The previous economic analysis which ignored the the Burke holder the pass-through theory was rejected by the Tenth Circuit There are a fair number of small refineries located in the Tenth Circuit It would have been inadvisable for EPA to proceed at that time Once that decision was out there Even if it's not binding on other courts Certainly, it would be argued again in the Tenth Circuit and there would be a high likelihood that EPA would lose So at that time we indicated we were going to revisit the 28 decisions all of them We asked for a remand 2018 just for 2018 2019 through 21. We're still pending at that time It would have been unwise to proceed on those until the Supreme Court had made its decision as soon as it did in June of 2021 which is almost the exact date that EPA that hunt sent those letters to EPA EPA started having meetings in which hunt participated it asked petitioners to submit supplements to their petitions hunts submitted five Supplements to its petition which are outlined in our brief I asked you to take a look at those all of those show without revealing CBI That they were on notice of this new way of doing things of this new approach on Top of that and this is going to get a little bit into my co-counsel's argument EPA has always advised it is not required and its economic theory does not depend on it But it's always advised small refineries to purchase RINs Radically so that if the price does go up and they receive a grant they can sell them at a windfall profit if they don't They are already in compliance the argument that Mr. Houston made that the EPA had Told his client that they did not need to purchase RINs You mean in 29, I'm sorry, what are you referring to specifically? I think at some point he made during the argument that he Was told that his client was told that they did not have to purchase RINs. I'm not aware of that being in the record Is that hunt made a decision in 2019 because they had received previous exemptions They told hunt that they did not need to purchase RINs. That's exhibit a to the declaration Your honor hunt EPA has always advised and it's 2016 guidance That every small refinery should expect to comply and plan to comply unless and until they receive an exemption I'd be shocked if anything in the record says that hunt need not buy RINs going forward Even in granting the exemptions and in submitting exemption petitions EPA said this only lasts for a year and the petitioner themselves is supposed to identify a date by which they can comply in Their submitted petition if there are no more questions on these issues. I'll turn it over to my co-counsel All right. Thank You. Mr. Jacoby. Thank you Mr. Harrison Good morning, your honors and may it please the court I'll be speaking to the issues of statutory interpretation and EPA's denial of hunts petitions based on the plain language of the Clean Air Act EPA's Interpretation that disproportionate economic hardship must be caused by RFS compliance is not only a permissible interpretation but the best interpretation of the statute itself and The second issue is as to EPA's denial of small refinery exemption petitions And those were appropriate and proper and consistent with the Clean Air Act and grounded in the extensive record in this case so I'd like to just turn to the EPA's statutory interpretation of 7545-09 and discuss its structure and how EPA's Interpretation is permissible and allowed The Supreme Court has long recognized that an agency can change its interpretation of a statute if it's permissible and explained I don't think that there's any doubt that EPA has explained in its denial documents the basis and the reasons For its new interpretation as to the permissibility. We believe the plain language of the statute itself is clear Reading subparagraph a and B in harmony with one another shows that the causal language used in both Establishes that the disproportionate economic hardship must be caused by RFS compliance There are three tiers of exemptions in subparagraph in 7545-09. The first is a temporary blanket exemption for two years under subparagraph a1 Following that two-year exemption or following that exemption until 2011. There is an additional exemption that's provided should the Department of Energy Determine under subparagraph a2 that Compliance with the requirements of paragraph 2 which are the RFS program requirements would impose a disproportionate economic hardship Impose is the causal language present there Sub clause 2 of that same subparagraph provides similar causal language by saying that EPA is required to grant an extension of that exemption if The small refinery would be quote subject to a disproportionate economic hardship if required to comply with the RFS requirements So with subparagraph a in mind the one at issue here is subparagraph B with a caption heading petitions based on disproportionate economic hardship and under subparagraph B a It allows for a small refinery to petition EPA at any time for an extension of the exemption Under subparagraph a the exemption that was granted for reasons of disproportionate impact caused by RFS compliance We would we would we argue tell me the way the EPA was interpreting it before So shift what the shift has been in practical terms so in practical terms your honor prior to the RFA decision from the Tenth Circuit the EPA was considering factors beyond those Specific to RFS compliance for like what? Generally speaking like what? finance the general finances and refining situations of a specific small refinery and so that are unrelated to the costs of RFS compliance so can't but aren't those two inextricably linked They're they're not sure what might be what might be the cost of RFS compliance for one may be meaningless to another well your honor the the statute provides that EPA can consider Certain other economic factors as part of its analysis on whether or not there is a those economic factors caused disproportionate economic hardship based on RFS compliance But you have to take into account well, I shouldn't say you have to don't you take into account the refiners Economic situation and figuring out whether or not there's economic hardship caused by RFS compliance Well, so that that goes to the second point the part of EPA's position in these denials is the determination that the RFS compliance obligations are the same for all refineries and That's demonstrated through the the RIN cost pass-through and the RIN discount. Sure, but if you Again, we don't get these cases too often. So you have to excuse my ignorance but let's say that the cost of RFS if the costs are the same for everybody across the board, right and the cost is $100,000 That cost is going to be different in terms of hardship To a small refinery that has a budget of $5,000,000 Compared to a refinery that has a budget of $1,000,000 well that RFS compliance costs are the same across the board to different refineries So Judge Jordan two points on that The first is that the RFS EPA has determined the RFS compliance costs are proportional to the to the refineries themselves and so that And to the second point on that theory or in EPA has analyzed that as part of its did the denial action here. I know but that doesn't help me is the proportionality standard theoretical or Practical in real life. It has been EPA has demonstrated it in the in its decision doc in the denial documents The answer the question doesn't answer the question Has Again to make up a number that makes it understandable for someone like me if the EPA determines that RFS compliance costs are proportionally 33% of a refineries operating budget is that 33% figure applied across the board or could it be 30% for one and 37% for another and 25% for yet another well, I think there's there's certainly the possibility of slight variations but I think what's also important to note with that is that the statute requires that the Economic hardship be disproportionate So it needs to be of a magnitude greater or a degree greater than that of any other small Other refinery disproportionate to whom disproportionate to the other refineries To what compared to itself and the small refineries I'm completely lost. I'm sorry. It's no sense because the whole point of the the exemption is For you to show that you have an individualized hardship. And so the individualized hardship should be based on your how it affects the disproportionately this new Standard that you have how it affects the individualized refinery and EPA has it takes into consideration those as let me back up so You applying the RIN discount and the RIN cost pass-through and EPA's economic theories EPA has reached the conclusion that there is no disproportionate economic hardship It seems to me that you're applying a theoretical ivory tower standard that has no true application to Actual business costs for these small refineries Judge Ogoa, to that point the DC Circuit in the Hermes v. EPA decision Affirmed EPA's use and reliance on the RIN discount and RIN pass-through theories there They found that EPA reasonably explained that the RIN discount concept occurs they and the EPA reasonably rejected the arguments that refineries can't pass through their costs and Found that they grounded and found that EPA grounded its conclusion in studies and data What EPA did here was it took that framework and that data from the Elan decision and it updated it with information on smaller markets and small refineries It ran an additional analysis and it found that those theories were similarly confirmed here for the for the small refineries And as part of this decision, can I ask you a procedural question? And if you don't know the answer if mr. Kobe does Where do things stand in the DC Circuit on the petitions that were filed there? Have those cases been briefed? Have they been heard on in terms of argument or are they just different places in the continuum? Your honor EPA's response brief is due at the end of September The petitioners there have filed their opening brief in early to mid-june Those are being heard in a consolidated manner. They have those cases have been consolidated. Yes, your honor. Okay. All right Thank you very much. Mr. Harrison Are they set for argument not yet been set for argument Okay, mr. Houston Thank you, your honor a couple points on venue I would urge the court to take a look at the Fifth Circuit's recent Texas decision The holding of that court is that when EPA bundles a number of individual decisions together Venue depends on whether the agency action requires consideration of individualized factors Excuse me. Was that case you said recent was that case mentioned in the party's? jurisdictional filings It was not because it post dated the party's jurisdictional filings. So that leads to my question. Can you give me the site for that? Decision, I'm sorry. I can't off. I don't have it in front of me I'd be happy to it's it's in our rule 28 J letter that we submitted to the court letter submitted No, it wasn't this week your honor that was a couple weeks ago I have it at the table I could provide it to you I know that's okay, or I can submit it by letter. No, no, no, you've submitted it. We'll find it We've certainly submitted it your honor. We've called the court's attention to it On whether this decision required consideration of individualized factors. I'd urge the court to look at ad 2309 in appendix volume 5 that is EPA's consideration of hunts Individualized data EPA could not make the decision here without that analysis And it's all about hunt and hunt alone hunts prices hunts customers. That's because every small refinery is different That's why venue belongs here on retroactivity. My friend says that we started responding to their new economic hypothesis in June of 2021 We're here talking about hunts operations in 2019 and 2020 they now say when they change their methodology We're supposed to buy RINs rateably they've changed what their instructions to us We proved we cannot do that and I did not hear my friends say one word to dispute our Submission our data showing that we literally would have run out of money And I also submit that you will not find one word in this administrative record of the agency refuting Hunts data showing it could not do it on why the agent the decision is arbitrary and capricious EPA has always said before this decision that the unique challenges of blending disproportionately more diesel fuel than Gasoline create economic hardship in this record nary a word. They barely address it I would urge the court to look when we pointed this out in our briefing look at page 57 of their brief There's a footnote on page 57 that just simply asserts that the RIN cost through hypothesis also holds for diesel fuel There's no citation. There's no analysis I think that tells you everything you need to know about whether EPA's analysis here is grounded in reality or just economic theory Last they assert that everyone pays the same costs for RINs But their own RIN price analysis from December 2022 now admits that that's not true Small refineries like hunt must pay more that adds up to tens of millions of dollars in RIN additional RIN costs and without that Fundamental premise their economic hypothesis falls apart is the Is that reality that you say exists now that small refineries pay more because they buy less Yes in part your honor. Absolutely. That's part one of many reasons. It's also because they have less bargaining power They have less leverage hunt competes in the Gulf Coast region against some of the largest Fuel companies in the country. I mean, this is an incredibly competitive market So just like you would expect that mom-and-pop stores don't pay the same to you know for their costs as Walmart It's the same a very small refinery like hunt has a different kind of economic position Than the largest integrated oil companies in the country. That's why we that's why Congress created small refinery hardship relief It recognized that that dynamic could make it harder for a refinery like hunt to comply with the RFS That's exactly why EPA granted relief and DOE recommended relief for hunt in every year of the program until this All right. Thank you all very much